IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff | § § § | |
| vs. | § § | C.A. NO. H 99-2822 |
| RALPHAELL V. WILKINS and RITA L. FRILLARTE, Defendants | § § | |

### PLAINTIFF STATE FARM'S REPLY TO DEFENDANT WILKINS' RESPONSE TO APPLICATION FOR APPOINTMENT OF RECEIVER

State Farm Mutual Automobile Insurance Company ("State Farm") files this reply to Judgment Debtor Ralphaell V. Wilkins' response to State Farm's application for a receiver. Mr. Wilkins' constantly evolving use of The Wilkins Law Firm, P.C. (the "PC") *may* be enough to temporarily keep shares of the PC out of the receivership, but State Farm still has the right to a turnover order.

**1.     The Wilkins Law Firm, P.C.**

Wilkins argues that this Court cannot order the turnover of his stock in the PC because he does not own the law firm that bears his name, and through which he practices law. In requesting that Wilkins' stock be placed in the receivership, State Farm foolishly relied upon Wilkins' own deposition testimony in this collection action:

> Q.    And the Wilkins Law Firm, is it currently a sole proprietorship, a partnership, a corporation?  What is it at the present time?
> **A.    It's professional corporation with, I believe, the charter is in default.**
> Q.    Why is the charter in default?
> **A.    It needs whatever reports have to be filed with the Secretary of State's office on a yearly basis.  They need to be done.**
> Q.    When's the last file that the Wilkins Law Firm, PC, filed yearly reports with the Secretary of State's office?
> **A.    I believe '99 or 2000.  Somewhere along that time frame.  As best as I can recall.**
> Q.    Who owns the shares of the Wilkins Law Firm, PC?
> **A.    I do.**
> Q.    100 percent?

    A.    **100 percent.**[1]

Based on Wilkins' sworn testimony that he owned the all of the PC's shares and that the PC had forfeited its charter, State Farm requested this Court to turnover his stock in, and the assets of, the PC to a receiver.

To be clear, the only evidence supporting Wilkins' attempted use of the PC to hide from his sizable judgment debt at this time is his own affidavit. He has not provided the stock certificates or stock ledger, nor has the anonymous alleged owner of the shares provided an affidavit.

Further, one might assume that Wilkins transferred his stock after he testified that he owned all of it in his deposition, but before he and signed his affidavit stating he owned none. However, Wilkins has lied under oath in the past regarding this exact issue-- ownership of the PC. For example, in his post judgment deposition in this case, Mr. Wilkins testified that no one other than him had ever owned any of the stock:

> Q. When was the Wilkins Law Firm, PC, first formulated as a professional corporation?
> A. **Sometime in 1998.**
> Q. At that time, who owned the stock?
> A. **I'm not sure any stock was transferred initially, as I recall.**
> Q. When was this stock first transferred?
> A. **That, I don't recall.**
> Q. To whom was the stock first transferred?
> A. **I believe to me.**
> Q. Has anyone ever owned any stock in the Wilkins Law Firm, PC, except for you?
> A. **No.**[2]

Wilkins answered differently when he was deposed in August of 2000 by Alan Scheinthal, a *receiver* previously appointed by a Texas Court to collect discovery sanctions awarded against Wilkins by Judge Greendyke:

> Q. Okay. Who is the owner of the Wilkins Law Firm, P.C.?
> A. **It's a corporation whose shares are not owned by me.**

---

[1] Post Judgment Deposition of Ralphaell V. Wilkins at page 5, lines 4 through 24. Excerpts of the Deposition are attached as Exhibit One.
[2] Post Judgment Deposition at page 6, lines 1 through 13.

2

> Q. Excuse me?
> A. **It is a corporation whose shares, no shares are owned by me.**
> Q. Who are the shares owned by?
> A. **I believe that all I can say about that is that they're not owned by me for privacy concerns.**
> Q. Okay. Do you know who they're owned by?
> A. **Yes, I do.**
> Q. And are you not going to answer my question? Are you refusing to answer my question?
> A. **I am asserting a privilege based on privacy to that.**
> MR. SCHEINTHAL: Okay. Certify that question.[3]

Wilkins created the PC in 1998— the same year State Farm filed this lawsuit against him and the same year he sought bankruptcy protection because of his looming liability State Farm. When he answers the question in the context of his practice, Mr. Wilkins says only he owns the shares of the PC. When asked in a collection or receivership context he says he does not. He has never, however, stepped forward with documentary proof of either position. The burden to present evidence that he does not own the PC lies with him. And under the circumstances, an affidavit simply should not suffice to satisfy that burden.

**2.   An Order Lifting the Stay in a Since-Closed Bankruptcy Proceeding Does Not Preclude a Creditor from Executing on a Non-Dischargeable Judgment.**

Wilkins argues that State Farm cannot execute on its judgment against him because of an order entered ten years ago through which the bankruptcy court lifted the stay to allow State Farm to liquidate its claim against Wilkins, but not execute any judgment. Of course, it would have been quite peculiar to allow execution on a state court judgment against a debtor in bankruptcy. In fact, the bankruptcy court would retain exclusive jurisdiction over such matters.

Quite a few developments in the decade since the bankruptcy court entered the order have rendered the "except for execution" language of the order moot. These

---
[3] Deposition of Ralphaell V. Wilkins taken by receiver Alan Scheinthal at page 7, lines 8 through 25.

3

developments include, but are not limited to the following: the removal of the case from state court back to bankruptcy court in 1999; the rending of a final judgment against Wilkins in the bankruptcy court in 2004, the determination in 2004 that Wilkins' debt to State Farm was not dischargeable; the Fifth Circuit Court of Appeals' dismissal of Wilkins' appeal in 2007; and, most notably, the closing of the bankruptcy estate in early 2008.

Wilkins spins a novel argument that the August 28, 1998, Order demonstrates that Judge Greendyke intent to disallow State Farm from ever executing on a judgment that was not yet in existence.  In fact, the order expressly states that the prohibition on execution is statement of the extent to which the stay is lifted, not an order eliminating State Farm's right to recover a judgment in perpetuity: "except that the stay shall not by this order be lifted as to execution of any judgment against debtor."  Wilkins responds that the subsequent reference to execution in the next paragraph must be read to mean something different, and thus must mean that Judge Greendyke meant that State Farm could never execute.  In fact, the next paragraph lifts the stay as to a subtly different thing "remedies" rather than "claims," thus requiring the same exception.

3.   **State Farm Remains Entitled to a Turnover Order and to the Appointment of a Receiver.**

Other than his "except for execution" argument, Wilkins does not suggest that State Farm is not entitled to the appointment of a receiver to identify non-exempt assets to be turned over for satisfaction of Wilkins' judgment.  The PC argument goes only to the scope of the order.  The fact that Wilkins has a convoluted arrangement with the PC, and that he uses the PC to pay paralegals a contingent recovery on personal injury

4

cases[4], are strong reasons supporting the need for a receiver in this matter. This is particularly true given the reality that Judge Greendyke previously rendered judgment in favor of Wilkins' Bankruptcy Estate for fraudulent transfers that Wilkins made to another contract paralegal, Hershel Butler dba United Administrative Aid.[5]

**4.   Conclusion**

If Wilkins can prove he transferred his stock in the PC, then State Farm would concede that this is not the proper proceeding through which to reverse pierce the PC's corporate veil. That must be accomplished through a separate proceeding, further continuing Wilkins' use of a decade-long series of dilatory tactics in this litigation. Regardless, Wilkins' inadequate discovery responses and evolving testimony leaves State Farm unable to precisely identify, quantify and attach for execution Wilkins' non-exempt assets. Consequently, State Farm requests that this Court order Wilkins to turnover all such assets to a court-appointed receiver.

Respectfully Submitted,

By:____/s/ M. Micah Kessler_____
      Joseph F. Nistico, Jr.
      Attorney-in-Charge
      State Bar No. 15035300
Nistico, Crouch & Kessler, P.C.
5151 San Felipe, Suite 9000
Houston, Texas  77056
Telephone:  (713) 781-2889
Telecopier:  (713) 781-7222
**Counsel for State Farm Mutual Automobile Insurance Company**

---

[4]  See Wilkins Post-Judgment Deposition at page 14, line 14 through page 15, line 2; at page 26, line 18 through page 27, line 24; at page 28, line 14 through page 30, line 14.
[5]  See Memorandum of Decision on Motion for Summary Judgment and Final Judgment, attached together as Exhibit Three.

**Of Counsel:**

Nistico, Crouch & Kessler, P.C.
M. Micah Kessler
State Bar No. 00796878
5151 San Felipe, Suite 900
Houston, Texas  77056
Telephone:  (713) 781-2889
Telecopier:  (713) 781-7222

### CERTIFICATE OF SERVICE

      This pleading was served in compliance with Federal Rule of Civil Procedure on May 15, 2008.

      Mr. Ralphaell V. Wilkins
      The Wilkins Law Firm, P.C.
      P.O. Box 88102
      Houston, Texas 77288
      **VIA FACSIMILE: (713) 660-0559**

                              */ M. Micah Kessler*
                              M. Micah Kessler