**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-99-2822 |
| | § | |
| RALPHAELL V. WILKINS and | § | |
| RITA L. FRILLARTE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

State Farm Mutual Automobile Insurance Co. ("State Farm"), which holds an unsatisfied damages judgment against Ralphaell L. Wilkins, has filed an application for the appointment of a receiver and master in chancery and for turnover after judgment. (Docket Entry No. 123). Wilkins has responded, (Docket Entry No. 124), and State Farm has replied, (Docket Entry No. 125).

Based on the motion, response, and reply, the parties' submissions, and the applicable law, this court grants State Farm's application. The reasons for this ruling are set out in detail below.

**I.     Background**

This case arises from a "sudden-stop" collisions insurance fraud scheme. Participants in the scheme sued State Farm in state court to recover proceeds under their automobile

insurance policies for personal injuries and property damage allegedly sustained in accidents. State Farm counterclaimed, alleging that the insureds' claims were fraudulent and that the scheme was organized and implemented by Wilkins, an attorney practicing in the Wilkins Law Firm, P.C., and his office manager, Frillarte. Wilkins filed for bankruptcy in 1998. State Farm's fraud and civil conspiracy claims proceeded in the bankruptcy court. In several amended complaints, State Farm alleged that Wilkins and Frillarte had presented over 150 fraudulent claims for personal injuries and property damage allegedly sustained in the staged collisions. Wilkins filed a third-party claim alleging fraud, conspiracy, and abuse of process against the attorneys representing State Farm ("the Attorney Defendants") in both the state court fraud action and in the bankruptcy action. The Attorney Defendants removed the state-court action to this court in 1999. In 2000, this court denied Wilkins's motions to remand and for sanctions against the Attorney Defendants and referred the case to the bankruptcy court. (Docket Entry No. 52).

In May 2004, the bankruptcy court issued a memorandum of decision and entered judgment against the debtor, Wilkins, and Frillarte. The court found them jointly and severally liable to State Farm for actual economic damages in the amount of $1,880,876.60 and punitive damages of $1,000,000 each. The bankruptcy court ruled that Wilkins could not discharge this judgment in bankruptcy under 11 U.S.C. § 523(a)(2) and (a)(6). (Docket Entry No. 54, Exs.. A–B).

2

Wilkins and Frillarte filed motions for new trial. The bankruptcy court issued a memorandum opinion and order in August 2004, (*id.*, Exs. C–D), denying the motions for a new trial in all respects save one. The bankruptcy court stated:

> It appears that State Farm's claims against [Frillarte] were not a core proceeding within the meaning of the bankruptcy code. In this Court's prior Memorandum of Decision, this Court made various findings and conclusions about [Frillarte] as agent of Debtor. Those findings and conclusions are core proceedings only insofar as they related to establishing findings and conclusions and a Judgment against Debtor. Although it is recognized that an agent can be individually liable for a tort or fraud he or she commits as an agent for another, the individual liability of the agent ([Frillarte] in the present instances) would not be a core proceeding for purposes of the bankruptcy court establishing individual liability against the agent, [Frillarte].

(Docket Entry No. 54, ex. C, at 5). The bankruptcy court agreed with the earlier decision of this court and concluded that it had "at a minimum, appropriate 'related to' jurisdiction" over Frillarte under 28 U.S.C. 157(c)(1):

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C.A. 157(c)(1) (West 2005). Accordingly, and as to Frillarte alone, the bankruptcy court modified the judgment. The findings of fact, conclusions of law, and holdings of the previous final judgment became proposed findings, conclusions, and holdings as to Frillarte. The bankruptcy court did not "in any manner, modify the Findings, Conclusions, Holdings and Judgment against Ralphaell V. Wilkins and the Memorandum Decision as to him."

(Docket Entry No. 54, ex. D).

On August 24, 2005, this court adopted the bankruptcy's court's proposed final judgment against Frillarte.  (Docket Entry No. 56).  Wilkins appealed this court's August 2005 decision as to Frillarte and the bankruptcy court's August 2004 decision as to him.  The Fifth Circuit dismissed the appeal as untimely.  The bankruptcy estate was closed in early 2008.

## II.     State Farm is Not Precluded from Executing its Judgment

Wilkins argues that State Farm is precluded from executing its judgment by an August 11, 1998 order issued by the bankruptcy court modifying the automatic stay.  That order, titled "Order Modifying Automatic Stay," provided:

> At Houston, Texas, came to be considered the Motion of State Farm Mutual Automobile Insurance Company's ("State Farm") Relief from Stay Filed herein.  Based upon State Farm's motion, Debtor's response and the arguments of counsel, the Court is of the opinion that the motion shall be GRANTED; it is therefore
> ORDERED that the automatic stay pursuant to 11 U.S.C. § 362 shall be lifted to allow the lawsuit . . . to proceed for the purpose of liquidating any and all claims of State Farm, including all appeals, except that the stay shall not by this order be lifted as to execution of any judgment against Debtor; it is further
> ORDERED State Farm shall be allowed to exercise all of its State law remedies regarding the prosecution of the lawsuit . . . except for execution of any judgment against debtor.

(Docket Entry No. 124, Ex. B).

An automatic stay issued in a bankruptcy case expires when the case is closed or dismissed or when a discharge is granted or denied.  11 U.S.C. § 362(c)(2); *Climer v. United States*, No. 98-50363, 1998 WL 915374, at *2 n.18 (5th Cir. Dec. 21, 1998) (citing 11 U.S.C.

§ 362(c)(2) (B)) ("[T]he statute makes clear that the automatic stay is abrogated when the case is dismissed to the same extent that it would be if the case were closed."); *In re Prado*, 340 B.R. 574, 585 (Bankr. S.D. Tex. 2006); *Shell Oil Co. v. Capital Fin. Servs.*, 170 B.R. 903, 906 (Bankr. S.D. Tex. 1994); *Norton v. Hoxie State Bank*, 61 B.R. 258, 260 (D. Kan.1986). The bankruptcy court issued a final judgment against Wilkins on August 25, 2004, when it denied his new trial motion. The automatic stay expired.

Wilkins argues that the part of the August 11, 1998 order stating that "State Farm shall be allowed to exercise all of its State law remedies regarding the prosecution of the lawsuit . . . except for execution of any judgment against debtor" did not relate to the modification of the automatic stay, but was a "a second part of the court's order, separate and apart from the first part of the order that addressed the modification of the automatic stay" that itself permanently barred State Farm from executing any judgment it obtained against Wilkins. (Docket Entry No. 124 at 6–7). The bankruptcy court's order was solely concerned with modifying the automatic stay to allow the claims to proceed against Wilkins. The order did not permanently bar State Farm from executing any final judgment entered against Wilkins.

State Farm is not precluded from executing the judgment against Wilkins.

## III. The Motion for Turnover After Judgment and Appointment of a Receiver and Master in Chancery

### A. The Legal Standard

Under Rule 64 of the Federal Rules of Civil Procedure, a court may order the seizure of property "to secure satisfaction of the potential judgment." FED. R. CIV. P. 64. The

manner in which property is seized depends on state law.  Rule 64 provides:

> At the commencement of and throughout an action, every remedy is available
> that, under the law of the state where the court is located, provides for seizing
> a person or property to secure satisfaction of the potential judgment.

FED. R. CIV. P. 64.

The Texas turnover statute, section 31.002 of the Texas Civil Practice & Remedies

Code, is a "procedural mechanism that gives Texas courts the power to satisfy a judgment

by reaching the assets of a judgment debtor that cannot be attached or levied by ordinary

legal process." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006).

"The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in

the possession of the judgment debtor or subject to the debtor's control." *Resolution Trust*

*Corp. v. Smith*, 53 F.3d 72, 77 (5th Cir. 1995) (quoting *Beaumont Bank, N.A. v. Buller*, 806

S.W.2d 223, 224 (Tex. 1991)).  Section 31.002 provides:

> A judgment creditor is entitled to aid from a court of appropriate jurisdiction
> through injunction or other means in order to reach property to obtain
> satisfaction on the judgment if the judgment debtor owns property, including
> present or future rights to property, that
>     (1)    cannot readily be attached or levied on by ordinary legal
>            process; and
>     (2)    is not exempt from attachment, execution, or seizure for
>            the satisfaction of liabilities.

TEX. CIV. PRAC. & REM. CODE § 31.002(a).

The Texas turnover statute may be used only to reach "assets of parties to the

judgment, not the assets of non-judgment third parties." *Bollore*, 448 F.3d at 322 (citations

omitted).  It "may not be used to determine the substantive property rights of the judgment

debtors or of third parties." *Id.* (citations omitted).

The Texas turnover statute provides that a court may "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE § 31.002(b)(3). Courts consider several factors in determining the need for a receiver, including the following:

> (1)    whether there exists a valid claim by the party seeking the appointment;
>
> (2)    the probability that fraudulent conduct has occurred or will occur;
>
> (3)    the likelihood of imminent danger that property will be concealed, lost, or diminished in value;
>
> (4)    the inadequacy of legal remedies;
>
> (5)    the lack of a less drastic equitable remedy; and
>
> (6)    the likelihood that appointing the receiver will do more good than harm.

*Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993) (citations omitted). The "appointment [of a receiver] is in the sound discretion of the court." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997) (citation omitted). "The form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." 12 CHARLES A. WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2983 (2d ed. 1997).

Under Texas law, a "court may, in exceptional cases, for good cause appoint a master in chancery . . . who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity," including the power to hold hearings, require the production of evidence, rule upon the admissibility of evidence, and examine witnesses.  TEX. R. CIV. P. 171; *Christensen v. Christensen*, No. 04-03-00095-CV, 2003 WL 22897120, at *1 (Tex. App.–San Antonio Dec. 10, 2003, pet. denied).  Appointing a master is in the trial court's discretion.  *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991).  The "exceptional case" and "good cause" standards are "not susceptible [to] precise definition."  *Id.*  "Although the trial court may consider the complexity of the case, the rule's standards may not be satisfied merely by showing that a case is time-consuming or complicated."  *In re Holt*, No. 01-06-00290-CV, 2006 WL 1549968, at *3 (Tex. App.–Houston [1 Dist.] June 8, 2006) (citing *Simpson*, 806 S.W.2d at 811).

### B.     Analysis

State Farm invokes the turnover statute to reach Wilkins's shares in the Wilkins Law Firm, P.C. and his contingent fee interests in causes of action and cases.  State Farm asserts that this property cannot readily be attached or levied on by ordinary legal process and that it is not exempt from attachment, execution, or seizure to satisfy an unpaid judgment. (Docket Entry No. 123 at 2–5; Docket Entry No. 125 at 1–3).  Wilkins does not dispute that

the property State Farm identified is nonexempt and cannot readily be attached or levied on by ordinary legal process.  Instead, Wilkins argues that the turnover statute does not permit State Farm to reach his shares in the Wilkins Law Firm or his contingent fee interests because the law firm was not a party to the judgment that State Farm obtained against Wilkins; he does not own any shares in the firm; and he is not a signatory on any of the firm's bank accounts.  (Docket Entry No. 124 at 2–4).

The Wilkins Law Firm is not subject to a turnover order because it was not a party to the judgment against Wilkins and there has been no finding that the Wilkins Law Firm is Wilkins's alter ego.  *See Maiz v. Virani*, 311 F.3d 334, 345 (5th Cir. 2002) (citing *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 283 (Tex. App. 1983)).  However, Wilkins himself is subject to a turnover order reaching any shares he owns in the law firm and any of his other property related to the firm and his legal practice, including contingent fee interests in cases or causes of action.

Wilkins contends that he does not own any shares in the Wilkins Law Firm, but he has given inconsistent testimony about his ownership interest in the firm.  Wilkins testified in a deposition taken by a court-appointed receiver on August 25, 2000 that the Wilkins Law Firm "is a corporation whose shares are not owned by me."  (Docket Entry No. 125, Ex. C).  In a February 13, 2006 deposition taken by State Farm, Wilkins testified that he owned "100 percent" of the shares of the Wilkins Law Firm and that no other person had ever owned any shares in the firm.  (Docket Entry No. 125, Ex. A).  In an April 2008 affidavit, Wilkins

9

stated, "I do not own any shares in The Wilkins Law Firm, P.C." and "I am not the signatory on any bank accounts owned by The Wilkins Law Firm, P.C."  (Docket Entry No. 124, Ex. A).  Wilkins offers no explanation for these inconsistencies.  He has not presented stock certificates, stock ledgers, bank statements, or other support for his affidavit statement that he no longer owns any shares in the firm and is not a signatory on any of the firm's bank accounts.  Wilkins does not assert that he transferred or sold his shares after the 2006 deposition and he does not identify a current owner of the shares.  The only person Wilkins has ever identified as a shareholder in his firm is himself.  Wilkins has refused to identify the location of shares in the Wilkins Law Firm or their present owner.

State Farm has made the necessary showing that Wilkins owns the identified property, the shares in the Wilkins Law Firm and contingent fee interests in a number of cases and causes of action.  *See  Beaumont Bank*, 806 S.W.2d at 227 (finding that debtor's "blanket assertion" and "unsubstantiated claim" that she no longer possessed nonexempt property was not sufficient to show that she did not possess the property).

Turnover is an appropriate means to reach a debtor attorney's shares in a law firm and his contingent fee interests in cases or causes of action.  *See Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 272 (Tex. App.1992, writ denied) ("We find that an attorney's accounts receivable, which consists of legal fees to be paid in the future are subject to turnover under the Texas Turnover Statute."); *Hennigan v. Hennigan*, 666 S.W.2d 322, 325 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.) (stating that "[i]ncome of this nature,

10

attorney fees, is inherently difficult to get to satisfy a judgment," and applying turnover statute to "accounts receivable, earned future income and unearned future income"); *see also Daniels v. Pecan Valley Ranch*, 831 S.W.2d 372, 375 (Tex. App. 1992, writ denied) (finding that the turnover statute may be used to reach payments from an annuity), *cert. denied*, 508 U.S. 965 (1993); *Cain v. Cain*, 746 S.W.2d 861, 863 (Tex. App.1988, writ denied) (noting that the turnover statute could be used to reach military retirement pay); *First City Nat'l Bank of Beaumont v. Phelan*, 718 S.W.2d 402, 405–06 (Tex. App.–Beaumont 1986, writ refused n.r.e.) (upholding the use of the turnover statute to reach future payments from a testamentary trust); *Matrix, Inc. v. Provident Am. Ins. Co.*, 658 S.W.2d 665, 668 (Tex. App. 1983, no writ) (finding that the turnover statute could be used to reach a promissory note).

The appointment of a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to State Farm to the extent required to satisfy the judgment is warranted in this case. State Farm has a valid claim against Wilkins. Wilkins's inconsistent and evasive accounts of his ownership and involvement in his law firm demonstrate a likelihood that fraudulent conduct has occurred or will occur and an imminent danger that his nonexempt property will be concealed, lost, or diminished in value. Legal remedies are inadequate to protect State Farm's interests; there is no less drastic remedy that would be effective; and there is no reason to believe that appointing a receiver will do more harm than good. *See Aviation Supply Corp.*, 999 F.2d at 316–17. Wilkins's inconsistent and sketchy accounts of his interest in the law firm also counsel in favor of appointing a receiver.

*See Santibanez*, 105 F.3d at 241 (quoting 7 JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 66.04[3] (2d. ed. 1996) ("Courts have held that receivers may be appointed 'to preserve property pending final determination of its distribution in supplementary proceedings in aid of execution.'").

The appointment of the receiver as a master in chancery is also warranted.  The receiver will be unable to identify and take possession of Wilkins's exempt property unless the receiver has the power to hold hearings, require the production of evidence, rule on the admissibility of evidence, and examine witnesses.  Unlike *In re Holt*, 2006 WL 1549968, at *3, in which the court found that it was not appropriate to appoint a master for a case involving the discovery of nonexempt property, this case involves the recovery of such property from an individual who has provided inconsistent and evasive accounts of his interests and who will likely refuse to cooperate with the receiver's attempts to identify and take possession of the property.  Wilkins's inconsistent and evasive accounts of his ownership in and involvement with his law firm present "exceptional circumstances" and "good cause" to appoint a receiver who is a master in chancery, under section 31.002 of the Texas Civil Practice and Remedies Code and Rule 171 of the Texas Rules of Civil Procedure.

## IV.  Conclusion

State Farm's application for turnover after judgment of Wilkins's shares in his law practice, the Wilkins Law Firm, P.C., and Wilkins's contingent fee interests, and for appointment of a receiver and master in chancery, is granted.  An order for turnover of property and for appointment of a receiver is separately entered.

SIGNED on July 28, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

13